Brittney Kaye **SETTLE,**
Plaintiff–Appellant,

v.

**DICKSON COUNTY SCHOOL BOARD,**
et al., Defendants–Appellees.

No. 93–6207.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 30, 1995.

Decided May 8, 1995.

---

MERRITT, C.J., delivered the opinion of the court, in which WEBER, D.J., joined. BATCHELDER, J. (pp. 156–59), delivered a separate opinion concurring in the result only.

MERRITT, Chief Judge.

The issue before us is whether Dana Ramsey, a junior high school teacher in Dickson, a small Tennessee town, violated the free speech rights of one of her ninth grade students, Brittney Settle, by refusing to accept a research paper entitled "The Life of Jesus Christ," and by giving her a "zero" for failing to write on another topic. Although this paper topic concerns religious subject matter, the plaintiff does not bring her case under the Free Exercise Clause or the Establishment Clause of the First Amendment. Instead, she has chosen to challenge Ms. Ramsey's rejection of her topic as restricting her rights of free speech under the First Amendment. The district court granted summary judgment for the defendants and dismissed the case. We now affirm the district court's judgment.

## FACTS

During the week of March 15, 1991, Ms. Ramsey assigned a research paper to her ninth-grade class at Dickson County Junior High School. In assigning the paper, the teacher stressed to the students that she wanted them to learn how to research a topic, synthesize the information they gathered, and write a paper using that information. Thus, as she explained, students could not merely expound on their own ideas. She required that each student use four sources in performing the research.

Each student could select his or her own topic, subject to the teacher's approval. She required only that each topic be "interesting, researchable and decent." She posted a sign-up sheet for each student to list the topic he or she had chosen. Between March 15 and March 22 students could sign up and change their topics at will. On March 22, Ms. Ramsey removed the sign-up sheet to

Kurt V. Beasley (argued and briefed), Beasley & Tyson, Brentwood, TN, Larry L. Crain (briefed), Crain & Theriot, Brentwood, TN, for plaintiff-appellant.

Laurence M. McMillan, Jr. (argued and briefed), Cunningham, Mitchell, Hicks, Brollier & McMillan, Clarksville, TN, Allan D. Kerns (briefed), Kerns & Menke, Dickson, TN, for defendants-appellees.

Before: MERRITT, Chief Judge; BATCHELDER, Circuit Judge; WEBER, District Judge.*

* The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

approve the topics, and afterwards students had to receive her approval if they wished to change their topic. On March 26, each student was required to hand in an outline of the paper he or she planned to write.

The plaintiff originally signed up to write a paper on "Drama." Subsequently, she changed her mind after deciding that the topic might be too broad. Without Ms. Ramsey's prior approval, plaintiff attempted to submit an outline for a paper entitled "The Life of Jesus Christ." The teacher refused to accept the outline and told plaintiff she would have to select another topic. At this point, plaintiff's father intervened to complain and met with the principal of the school, Ms. Ramsey, and other school officials. Ms. Ramsey told plaintiff's father that she would accept a paper on religion as long as it did not deal solely with Christianity or the Life of Christ. On April 3, plaintiff attempted to submit another outline, with the title "A Scientific and Historical Approach to Jesus Christ." Ms. Ramsey rejected this outline as well. Ultimately, the principal, the superintendent of schools, and the Dickson County School Board all expressed their support for Ms. Ramsey's decision and noted that the teacher had not exceeded her discretion as far as they were concerned. Plaintiff and her family decided to make an issue of the matter before the School Board and then in court.

In her statement at a hearing before the School Board, and in depositions taken for the litigation of this case, Ms. Ramsey has explained that she refused to allow plaintiff's topic for a combination of reasons. First, she stated that the student had failed to receive permission to write on the topic prior to handing in the outline. Because plaintiff did not adhere to the requirement of submitting her topic for her teacher's approval, she had to choose another topic.

Second, Ms. Ramsey said that she believed that it would be difficult for her to evaluate a research paper on a topic related to Jesus Christ. She stated that she knew that plaintiff had a strong personal belief in Christianity that would make it difficult for her to write a dispassionate research paper. Furthermore, Ms. Ramsey believed that the pa-per would be difficult to grade because plaintiff might take any criticisms of the paper too personally. Even remarks regarding grammar or organization might be misinterpreted as criticisms of plaintiff's religious beliefs. Ms. Ramsey thought it would be wiser to avoid such potential misunderstandings.

Third, the teacher indicated that she "just knew that we don't deal with personal religion—personal religious beliefs. It's just not an appropriate thing to do in a public school ... People don't send their children to school for a teacher to get in a dialogue with personal religio[us] beliefs. They send them to learn to read and write and think. And you can do that without getting into personal religion." (J.A. at 57).

Fourth, the teacher felt that because plaintiff knew a lot about Jesus Christ, she could produce an outline without doing any significant research, and thus defeat the purpose of the exercise. The teacher stated "it was a lot easier to write a quick little preliminary outline on Jesus Christ, which she knew a lot about, which most of my students knew a lot about." (J.A. at 57–58). Further, she said that part of the purpose of the paper was to have the students research a paper on a subject with which they were unfamiliar. (J.A. at 70).

Fifth, Ms. Ramsey at one point during her testimony before the School Board stated "the law says we are not to deal with religious issues in the classroom." (J.A. at 222). She seems to have thought that she should not allow plaintiff to write on the topic of her choice because the law may prohibit this kind of religious paper in public school classrooms.

Sixth, while testifying before the school board, Ms. Ramsey also stated that she rejected the topic because the assignment required the use of four sources and that "all of the sources that you [are] going to find documenting the life of Jesus Christ derive from one source, the Bible." (J.A. at 221). She seems to have meant primary or original sources, but during a previous deposition she said she allowed secondary sources: "I required that they have two books and two encyclopedias or resources, but they could

substitute using magazine articles or pamphlets." (J.A. at 38).

As a result of plaintiff's refusal to comply with the requirements Ms. Ramsey had specified, she received a zero for the assignment. The student subsequently sued Ms. Ramsey for violating her rights of free speech. Judge Wiseman dismissed the case on a motion for summary judgment relying on *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988), which upheld a school official's decision to censor a story in the school newspaper about pregnancy at the school. Plaintiff now appeals the district court's ruling on two grounds. She contends that as a matter of law, Ms. Ramsey violated her First Amendment rights as applied to the states by the Fourteenth Amendment, and alternatively argues that there is a dispute of material fact as to what Ms. Ramsey's actual reasons were for refusing to let her write the paper on Jesus Christ, making summary judgment inappropriate. We take up these arguments in turn.

## DISCUSSION

After reviewing the precedents concerning students' rights of free speech within a public school, we find few cases that address the conflict between the student's rights of speech in the classroom and a teacher's responsibility to encourage decorum and scholarship, including her authority to determine course content, the selection of books, the topic of papers, the grades of students and similar questions. Students do not lose entirely their right to express themselves as individuals in the classroom, but federal courts should exercise particular restraint in classroom conflicts between student and teacher over matters falling within the ordinary authority of the teacher over curriculum and course content. "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

■ The free speech rights of students in the classroom must be limited because effective education depends not only on controlling boisterous conduct, but also on maintaining the focus of the class on the assignment in question. So long as the teacher violates no positive law or school policy, the teacher has broad authority to base her grades for students on her view of the merits of the students' work. *Board of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *Parate v. Isibor*, 868 F.2d 821, 828 (6th Cir.1989) ("[t]he individual professor's assignment of a letter grade is protected speech.") Grades are given as incentives for study, and they are the currency by which school work is measured.

■ Plaintiff argues that Ms. Ramsey's rejection of her paper topic infringed upon her fundamental right to freedom of speech. The censorship in the *Hazelwood* case, referred to earlier, involved a school newspaper, a kind of open forum for students, and even there the Supreme Court said that "educators do not offend the First Amendment by exercising editorial control over the style and context of student speech in school-sponsored activities so long as their actions are reasonably related to legitimate pedagogical concerns." 404 U.S. at 273, 92 S.Ct. at 511. Where learning is the focus, as in the classroom, student speech may be even more circumscribed than in the school newspaper or other open forum. So long as the teacher limits speech or grades speech in the classroom in the name of learning and not as a pretext for punishing the student for her race, gender, economic class, religion or political persuasion, the federal courts should not interfere.

Like judges, teachers should not punish or reward people on the basis of inadmissible factors—race, religion, gender, political ideology—but teachers, like judges, must daily decide which arguments are relevant, which computations are correct, which analogies are good or bad, and when it is time to stop writing or talking. Grades must be given by teachers in the classroom, just as cases are decided in the courtroom; and to this end teachers, like judges, must direct the content of speech. Teachers may frequently make

mistakes in grading and otherwise, just as we do sometimes in deciding cases, but it is the essence of the teacher's responsibility in the classroom to draw lines and make distinctions—in a word to encourage speech germane to the topic at hand and discourage speech unlikely to shed light on the subject. Teachers therefore must be given broad discretion to give grades and conduct class discussion based on the content of speech. Learning is more vital in the classroom than free speech. All six of Ms. Ramsey's stated reasons for refusing to allow Brittney to write the paper fall within the broad leeway of teachers to determine the nature of the curriculum and the grades to be awarded to students, even the reasons that may be mistaken. It is not for us to overrule the teacher's view that the student should learn to write research papers by beginning with a topic other than her own theology. Papers on the transfiguration of Jesus and similar topics may display more faith than rational analysis in the hands of a young student with a strong religious heritage—at least the teacher is entitled to make such a judgment in the classroom.

The case relied upon most heavily by plaintiff's lawyers, *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), supports the conclusion that teachers have broad discretion in limiting speech when they are engaged in administering the curriculum. In *Tinker,* the Court held that a student could wear a black armband to protest the Vietnam War. But, the Court found central to its holding that wearing the armband would not "substantially interfere with the work of the school or impinge on the rights of other students." *Id.* at 509, 89 S.Ct. at 738. The Court specifically stated that a school could limit otherwise protected speech if it did so as part of a "prescribed classroom exercise." *Id.*

Ms. Ramsey's justification that the law may prohibit teaching about religion in public schools may be a mistake of law, depending on what she meant. Similarly, her contention that there is only one source for a paper on Jesus Christ may also be mistaken. According to plaintiff's lawyers, these mistakes raise the question of pretext and call forth an attack on the teacher's integrity.

The lawyer for plaintiff contended at oral argument that all of Ms. Ramsey's reasons are pretexts for punishing her for her desire to express her thoughts about the life of Jesus. He seemed to believe that the teacher limited plaintiff's speech because of hostility to her religion, and he argued that we should draw an inference of lying from the two "mistaken" reasons. The argument that Ms. Ramsey was untruthful in expressing her real reasons has no basis in the record, as both the School Board and the District Court found, and arises from an unfortunate tendency in lawsuits for parties to cavil at their opponents through unsupported accusations. There is no basis for finding a real dispute of fact about Ms. Ramsey's motives, and the District Court was therefore correct in disposing of the case on summary judgment.

Accordingly, the judgment of the district court is AFFIRMED.

BATCHELDER, Circuit Judge, concurring.

While I agree with the majority that the district court properly granted summary judgment for the defendants-appellees in this case, I respectfully disagree with both the majority's discussion of the facts and its analysis of the law. Consequently, I concur only in the result of the majority opinion.

There is no doubt that a balance must be struck between a student's right to freedom of expression in the classroom and a teacher's right to control and manage that classroom. And while it is true that courts should not meddle in the day to day operation of school functions, " '[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.' " *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968) (quoting *Shelton v. Tucker,* 364 U.S. 479, 487, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960)). In the words of the Supreme Court, it is indisputable that "students ... [do not] shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Com-*

*munity Sch. Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969).

However, we ought not go about striking this balance unless the facts of the case require it. In my view, this is not such a case. The crux of Brittney's claim in this case is that she was assigned to choose an "interesting, researchable and decent" topic for a research paper in her ninth-grade English class, she chose as her topic "The Life of Jesus Christ," she was not permitted to write the paper on this topic *because it was religious,* and this deprived her of her right to engage in free expression. Although I do not think that the facts in regard to this claim are as clear as the majority opinion portrays them as being, the *material* facts are clear, those facts are not in dispute, and those facts do not state a First Amendment claim. This case is not about Brittney Settle's First Amendment right to express her views, opinions or beliefs, religious or otherwise, in the classroom. This case is about whether Brittney's ninth-grade English teacher may determine what topic is appropriate to satisfy a research paper assignment in that class.

The material facts are that Ms. Ramsey assigned a research paper to her ninth-grade class, that she permitted the students to choose their own topics, and that she restricted that choice only by these criteria— that the topic be "interesting, researchable and decent." The paper was to be a research paper, *not* an opinion paper, and it was to be written solely to be turned in to the teacher for a grade, *not* for publication in a school newspaper or any other forum. Brittney timely chose a topic, changed that topic without the teacher's permission to "The Life of Jesus Christ," and was denied permission to write her paper on the changed topic. Ms. Ramsey gave a number of reasons for refusing to permit Brittney to write her paper on the life of Christ, Brittney refused to choose a new topic, Ms. Ramsey gave her a "zero," and her decision was upheld by school officials. This lawsuit ensued.

In my view, these facts simply do not state a constitutional claim. Ms. Ramsey was not engaged in restricting Brittney's expression.

She was engaged in restricting Brittney's choice of topic for a research paper. Brittney does not expressly claim that a classroom teacher cannot control the subject matter for such assignments without violating the students' rights of expression. Rather, she claims that the restrictions on this assignment were so loose that her choice of topic fit the assignment, and that Ms. Ramsey refused to permit her to use that topic because the topic was religious. Brittney bolsters her claim by asserting that Ms. Ramsey's reasons for refusing to permit the topic were obviously pretextual.

I would agree that some of Ms. Ramsey's after-the-fact reasons are not very convincing. And I do not agree with the majority's finding that there is no basis in the record for a claim that Ms. Ramsey was not truthful in stating those reasons. More importantly, however, I do not think that Ms. Ramsey's after-the-fact statement of reasons, even if those reasons were pretextual, were pretexts for suppressing Brittney's expression. They were pretexts for an error in judgment. The one thing which this record demonstrates clearly is that what Ms. Ramsey was guilty of was failing to provide this ninth-grade class with substantive guidelines for choosing their research paper topics. Faced with Brittney's new and unapproved topic, Ms. Ramsey realized that the criteria that she had in mind, but had not adequately explained to the class, limited the acceptable topics well beyond the general criteria of "interesting, researchable and decent."

Implicit in the majority's opinion is the view that classroom teachers can make mistakes of judgment in determining how to teach, and these mistakes, so long as they are not based on impermissible criteria, do not give rise to claims of constitutional deprivations. I wholly agree. And on the facts of this case, that is all that needs to be said.

The majority, however, has engaged in a First Amendment analysis of this case. As I have stated, I do not believe that the facts here implicate Brittney's First Amendment rights, but I take very seriously Brittney's right to express her views at school—including her religious beliefs—and for that reason, I must respectfully disagree with the majori-

ty's analysis. "Religionists no less than members of any other group enjoy the full measure of protection afforded speech, association, and political activity generally." *McDaniel v. Paty*, 435 U.S. 618, 641, 98 S.Ct. 1322, 1336, 55 L.Ed.2d 593 (1978) (Brennan, J., concurring). Brittney's status as a high school student does not alter the fundamental core of her right to freedom of expression under the First Amendment. In the context of the classroom, however, there are necessary limits on student expression. The rights of students to express their views in the public classroom "are not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549 (1986).

It is the "oft-expressed view" of the Supreme Court that "the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273, 108 S.Ct. 562, 571, 98 L.Ed.2d 592 (1988) (citations omitted). That, it seems to me, is precisely why complaints such as the one Brittney Settle brings before us today, do not state constitutional claims, and cannot be made to fit within the framework of cases such as *Hazelwood* and *Tinker*, upon which the majority attempts to rely.

The facts in this case are not analogous to the facts in *Hazelwood*. Brittney's paper was to be written solely for the purpose of fulfilling an assignment in English class. It was not for publication in a school-sanctioned newspaper,[1] or in any other forum. There is no way to make a colorable claim that this paper is speech which might be viewed by the community as bearing the imprimatur of the school, the circumstance which was central to the Supreme Court's holding in *Hazelwood*. *Id.* at 270–71, 108 S.Ct. at 569–70.

Neither is this case like the situation in *Tinker*. A research paper is not an expression of opinion, and the restriction of choice of topic is not readily analogous to the kind of pure expression of student opinion, that happened to take place in the classroom, that the Supreme Court addressed there. ·*Tinker*, 393 U.S. at 511, 89 S.Ct. at 739.

If there were a First Amendment issue here, it would fall somewhere in between *Hazelwood* and *Tinker* as a form of student expression *allowed* under the school curriculum but *not* sponsored or endorsed by the school. Certainly not all student speech in the classroom bears the imprimatur of the school. This seems as obvious as the opposite proposition; students do not have an unlimited or unbridled right to speak out freely while on school property. The Supreme Court has acknowledged that a difference exists "between speech a school must *tolerate* and speech a school must affirmatively promote." *Alabama Student Party v. Student Government Association*, 867 F.2d 1344, 1347 (11th Cir.1989) (emphasis added) (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988)).

The bottom line is that when a teacher makes an assignment, even if she does it poorly, the student has no constitutional right to do something other than that assignment and receive credit for it. It is not necessary to try to cram this situation into the framework of constitutional precedent, because there is no constitutional question.

That does not, however, make the majority's treatment of Ms. Ramsey's stated reasons for rejecting Brittney's paper topic irrelevant. The majority opinion sets out six reasons given by Ms. Ramsey for refusing to permit Brittney to write her research paper on the "The Life of Jesus Christ," and holds that "[a]ll six of Ms. Ramsey's stated reasons for refusing to allow Brittney to write the paper fall within the broad leeway of teachers to determine the nature of the curriculum and the grades to be awarded to students, even the reasons that may be mistaken."

---

1. I am puzzled by the majority's characterization of the school newspaper in *Hazelwood* as "a kind of open forum for students...." Majority opinion at 155. The Supreme Court in that case explicitly found that the district court had correctly dismissed as not credible the students' claim that they believed they could publish "practically anything" in the paper, and held that the newspaper was not a forum for public expression. *Hazelwood*, 484 U.S. at 269 & n. 2, 108 S.Ct. at 569 & n. 2.

Majority opinion at 156. I cannot agree. Ms. Ramsey said, for example, that " 'we don't deal with personal religion' " and " 'the law says we are not to deal with religious issues in the classroom.' " Majority opinion at 154. On the contrary, religious speech, like all speech, does have a place in the classroom. According to the Supreme Court:

> Government in our democracy, state and national, must be neutral in matters of religious theory, doctrine, and practice. It may not be hostile to any religion or to the advocacy of noreligion [sic]; and it may not aid, foster, or promote one religion or religious theory against another or even against the militant opposite. The First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.

*Epperson v. Arkansas,* 393 U.S. 97, 103–04, 89 S.Ct. 266, 269–70, 21 L.Ed.2d 228 (1968) (footnote omitted). Ms. Ramsey was dead wrong in her view that Brittney's paper topic was impermissible because a paper of a religious nature is impermissible in the public schools. Had the assignment been to write a paper of opinion, and had Ms. Ramsey rejected the paper on the ground of its religious content alone, Brittney's freedom of speech truly would have been violated. I do not believe, therefore, that the majority correctly states the law in this regard by holding "[l]earning is more vital in the classroom than free speech." Majority opinion at 156. "In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Tinker,* 393 U.S. at 509, 89 S.Ct. at 738.

Brittney also attempts to raise an equal protection claim contending that because Ms. Ramsey permitted other students to choose research topics based on religious themes, Brittney was denied constitutional equal protection under the laws. Several other students in Brittney's class were permitted to research and write on the topics "Spiritualism," "Reincarnation," and "Magic Throughout History." Once again, however, it was within the teacher's discretion to determine whether these topics conformed to the restrictions inherent in the research assignment. So long as the student authors would be required to compile research and organize facts in an objective fashion, their topics, religious or not, could be judged appropriate for the assignment. Ms. Ramsey properly exercised her power of control over the classroom in distinguishing Brittney's topic from those others in her ninth-grade class. On these facts, Brittney has not presented an equal protection claim.

