Jonathan COY, A Minor, By and Through his parents and natural guardians, Linda K. COY, Craig D. Coy, Plaintiffs,

v.

BOARD OF EDUCATION OF THE NORTH CANTON CITY SCHOOLS, et al., Defendants.

No. 401CV1812.

United States District Court,
N.D. Ohio,
Eastern Division.

April 29, 2002.

Jillian S. Davis, Cleveland, OH, for Plaintiffs.

David K. Smith, Krista K. Keim, Scott C. Peters, Britton McGown Smith Peters & Kalail, Cleveland, OH, Mary Jo Shannon Slick, Canton, OH, Donald P. Wiley, Baker, Dublikar, Beck, Wiley & Mathews, North Canton, OH, for Defendants.

## ORDER

GWIN, District Judge.

On March 14, 2002, Plaintiffs Jonathan Coy ("Jon Coy" or "Coy"), Linda Coy, and Craig Coy filed a motion for summary judgment [Doc. 20]. On the same date, Defendants John Stanley, Thomas Shoup, the North Canton City School District (the "school district"), and the Board of Education of the North Canton City Schools (the "board of education") also filed a motion for summary judgment [Doc. 23]. The parties oppose each others' motions.

For the reasons discussed below, the Court grants the defendants summary judgment on the plaintiffs' third claim. The Court also grants the plaintiffs' motion for summary judgment on their facial challenge to section 21 of the school district's student conduct code. However, because material issues of fact still exist with respect to the defendants' motivation for disciplining Jon Coy, the Court denies the parties' motions for summary judgment with respect to the plaintiffs' first and fourth claim and denies Defendants Shoup and Stanley qualified immunity.

## I. Background

In this case, Plaintiff Jon Coy, through his parents Linda and Craig Coy, says the defendants violated his first amendment rights when they disciplined him. Plaintiff Jon Coy says the defendants disciplined him because he created a website on his home computer, an activity protected under the First Amendment to the U.S. Constitution. Specifically, the plaintiffs say Defendant Stanley, the principal of North Canton Middle School, and Defendant Shoup, the school district's superintendent, initially suspended Jon Coy for four days and then expelled him for eighty additional days because they did not like the content of his website.

In addition, the plaintiffs say that the provisions of the school district's code of conduct used to suspend Jon Coy are unconstitutionally vague and overbroad because the provisions prohibit protected speech with no justification and give a speaker no indication what speech might violate the student conduct code.

In response, the defendants say that they disciplined Jon Coy for accessing an unauthorized website, the website he created on his home computer, while on school property and with a school computer. In addition, they say he was disciplined because he accessed lewd and obscene material on school premises in violation of the student conduct code when he accessed his website in a school computer lab. Finally, the defendants say that Defendants Stanley and Shoup should receive qualified immunity because they were performing a discretionary

function, and their conduct arguably did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

This case arises out of Jon Coy's development of a computer website and the defendants' claim that the site, and Coy's access to his own site, violated school rules. At the beginning of the school year, Jon and Linda Coy signed the school district's computer network/internet acceptable use policy ("internet policy") outlining acceptable behavior for students who accepted the privilege of using school computers. Among other things, the internet policy forbade students from "[h]acking into unauthorized computers, sites, or information databases" and "[d]isplaying offensive messages or pictures." The internet policy informed students that discipline as outlined by the student conduct code may be applied for violations of the policy.

Before March 2001, Jon Coy created a website. He created the website on his home computer, and he created it on his own time. No part of his website was created using school equipment or during school hours.

Jon Coy's website purported to describe the exploits of a group of skate boarders who called themselves "NBP." The website contained pictures and biographical information of Coy and his friends, quotes attributed to Coy and his friends, and a section entitled "losers." The "losers" section contained the pictures of three boys who attended the North Canton Middle School. A few insulting sentences were written under each picture. Most objectionable was a sentence describing one boy as being sexually aroused by his mother. In addition to the "losers" section, the website contained two pictures of boys giving the "finger," some profanity, and a depressingly high number of spelling and grammatical errors. While somewhat crude and juvenile, the website contains no material that could remotely be considered obscene.[1]

On March 26, 2001, middle school students told math teacher Ester Presutto about a website created by Plaintiff Jon Coy. Presutto viewed the website and, because of its content, decided to tell Defendant Stanley about it. Stanley then viewed the website. After viewing the website, Stanley did not immediately take action against Coy.

On March 27, 2001, while Coy was in the school's computer lab with the rest of his

---

1. Ohio Revised Code section 2907.01 defines obscenity:

[A]ny material or performance is "obscene" if any of the following apply:
(1) Its dominant appeal is to prurient interest;
(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;
(3) Its dominant tendency is to arouselust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;
(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;
(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose.
Ohio Rev.Code § 2907.01(F).

class, his teacher observed him toggling between screens while supposedly doing school work. The teacher reported this information to Stanley. Based on this report, Stanley asked Eric Curtis, the school district's technology specialist, to check the computer Jon Coy was using to see which websites had been accessed. On March 29, 2001, Curtis conducted a history of the computer that Coy used in the computer lab. Curtis determined that Coy had accessed his own, unauthorized website from the computer lab on March 27, 2001.

On April 2, 2001, Stanley, Curtis, and the school district's resource officer, Randy Manse,[2] met to discuss Jon Coy. At this meeting, they agreed Curtis would report his findings to Defendant Shoup and that Officer Manse would speak to his superior about the website. Subsequent to this meeting, Stanley informed Shoup that he was going to suspend Coy for four days. Shoup agreed with this decision and asked Stanley to note on the suspension letter that Coy would be referred to the superintendent for possible expulsion.

On April 6, 2001, Stanley called Coy to his office and suspended him for four days. The defendants also gave Craig and Linda Coy a notice of their son's suspension. The notice said Plaintiff Jon Coy would be suspended for violation of sections 8, 14, and 21 of the student conduct code. The relevant student conduct code sections state:

8. Obscenity: A student shall not use obscenity, profanity, any form of racial or ethnic slurs, or other patently offensive language or gesture, nor shall a student be in possession of patently offensive material on school property, at school-sponsored events off school grounds, or during travel to and from school.

14. Disobedience: A student shall not be defiant, belligerent, disrespectful, or fail to comply with school rules or directions of teachers, substitute teachers, teacher aides, administrators, or other authorized school personnel during any period of time when the student is properly under the school jurisdiction.

21. Inappropriate Action or Behavior: Any action or behavior judged by school officials to be inappropriate and not specifically mentioned in other sections shall be in violation of the Student Conduct Code.

The defendants also notified the North Canton Police Department. The police approached the Coys and advised them that Jon Coy was being investigated.

The April 6, 2001, suspension letter also stated that Jon Coy was being referred to the superintendent for possible expulsion. Superintendent Shoup followed this letter with notice that Plaintiff Jon Coy was being considered for expulsion. The expulsion notice referred to the alleged violations of student conduct code sections 8, 14, and 21.

On April 24, 2001, the school district held a hearing and expelled Jon Coy for eighty days, from April 26, 2001, to November 14, 2001. In documenting its decision, the school district's expulsion letter modified the original expulsion decision. Coy was allowed to remain in school but would be on probation during the eighty-day expulsion period. Coy would have to leave school if he violated any other section of the student conduct code. In addition, he was not allowed to attend or participate in after school activities for the remainder of the eighth grade school year, a period of approximately six weeks. The expulsion letter stated that "[t]he inappropriate website is a major concern in this disciplinary matter."

---

**2.** The resource officer is a member of the local police department who acts as a liaison between the school district and the local police department.

The plaintiffs hired an attorney, who timely appealed the expulsion. On May 17, 2001, the board of education conducted a hearing and upheld the expulsion. Prior to this incident, Jon Coy had never been expelled or suspended from school, and defendants show no evidence of any prior discipline.

On July 26, 2001, the plaintiffs filed their complaint. In Claim 1, the plaintiffs say the defendants violated Jon Coy's first amendment rights by disciplining him for creating, publishing, and maintaining the website at issue. In Claim 2, the plaintiffs say Jon Coy's first amendment rights were violated because the defendants disciplined him under the unconstitutionally vague and overbroad sections of student conduct code. In Claim 3, the plaintiffs say Defendants Shoup and Stanley chilled Jon Coy's speech by causing a police officer to visit his home and causing the internet service provider to discontinue hosting the website. Finally, in Claim 4, the plaintiffs say the defendants' actions violated Article I, Section 11 of the Ohio Constitution.

The Court considers the parties' motions below.

## II. Legal Standard

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir.2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.*

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock Co.,* 96 F.3d 174, 178 (6th Cir.1996) (internal quotation marks omitted).

## III. Analysis

The plaintiffs and defendants have filed opposing motions for summary judgment. The Court will address each of the plaintiffs' claims in turn.

### A. Discipline in Violation of the First Amendment

The plaintiffs' first claim is that the defendants violated Jon Coy's right to freedom of expression by disciplining him for the content of his website. The defendants now say they disciplined Jon Coy because he violated the school district's internet policy and displayed vulgar speech at school. Earlier, the defendants explained their discipline as resulting from the creation of the website, not the accessing of the website from school.

■ Courts have long held that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). How-

ever, it is equally clear that public school officials have the right to regulate speech "in the classroom or in school assembly" and "prohibit the use of vulgar and offensive terms in public discourse." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 683, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). Students' first amendment rights "must be 'applied in light of the special characteristics of the school environment.'" *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) (quoting *Tinker*, 393 U.S. at 506, 89 S.Ct. 733). Importantly, "[a] school need not tolerate student speech that is inconsistent with its 'basic educational mission,' even though the government could not censor similar speech outside the school." *Id.* (quoting *Fraser*, 478 U.S. at 685, 106 S.Ct. 3159).

In *Tinker*, the Supreme Court considered a school district's suspension of students who violated school policy by wearing black armbands to school in protest of the Vietnam War. The Court held that the school's actions violated the students' freedom of speech. *Tinker*, 393 U.S. at 513–14, 89 S.Ct. 733. The Court noted that "[t]he problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style or deportment .... Our problem involves direct, primary First Amendment rights akin to 'pure speech.'" *Id.* at 507–08, 89 S.Ct. 733. The Court concluded that to justify the prohibition of a particular expression of opinion, the school must "show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Id.* at 509, 89 S.Ct. 733. The Court held that the prohibition of the armbands could not be sustained without showing that engaging in the prohibited conduct would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Id.* (quoting

*Burnside v. Byars*, 363 F.2d 744, 749 (5th Cir.1966)).

In *Fraser*, the Supreme Court distinguished *Tinker* when it held that a school district acted within its permissible authority in disciplining a student who gave an offensively lewd and indecent student government nomination speech at a mandatory school assembly. *Fraser*, 478 U.S. at 685, 106 S.Ct. 3159. In reaching its conclusion, the Court noted "[t]he marked distinction between the political 'message' of the armbands in *Tinker* and the sexual content of respondent's speech in this case." *Id.* at 680, 106 S.Ct. 3159. The Court recognized "that the constitutional rights of students in public schools are not automatically coextensive with the rights of adults in other settings." *Id.* at 682, 106 S.Ct. 3159. *Fraser* ultimately upheld the school's discipline of the student because of the school's need to teach students appropriate social behavior. *See Castorina v. Madison County Sch. Bd.*, 246 F.3d 536, 542 (6th Cir.2001) (citing *Fraser*, 478 U.S. at 683, 106 S.Ct. 3159). In making its decision, the Court drew a line between expression directed at a certain viewpoint and lewd and vulgar speech:

> Unlike the sanctions imposed on the students wearing armbands in *Tinker*, the penalties imposed in this case were unrelated to any political viewpoint. The First Amendment does not prevent the school officials from determining that to permit a vulgar and lewd speech such as respondent's would undermine the school's basic educational mission. A high school assembly or classroom is no place for a sexually explicit monologue directed towards an unsuspecting audience of teenage students.

*Fraser*, 478 U.S. at 685, 106 S.Ct. 3159.

Finally, in *Hazelwood*, the Supreme Court echoed its position in *Fraser* that "[a] school need not tolerate student speech that is inconsistent with its 'basic

educational mission ... even though the government could not censor similar speech outside the school.'" *Hazelwood,* 484 U.S. at 266, 108 S.Ct. 562 (quoting *Fraser,* 478 U.S. at 685, 106 S.Ct. 3159). The Court held that the school district in that case did not violate the First Amendment by exercising editorial control over the content of student speech in a school-sponsored newspaper "so long as [the school's] actions are reasonably related to legitimate pedagogical concerns." *Id.* at 273, 108 S.Ct. 562. The Court distinguished between the first amendment analysis applied in *Tinker* and the analysis applied in *Fraser,* noting that the decision in *Fraser* rested on the vulgar and offensive character of the speech, whereas *Tinker* rested on the propensity of the speech materially to disrupt class work or involve substantial disorder. *See Boroff v. Van Wert City Bd. of Educ.,* 220 F.3d 465, 468–69 (6th Cir.2000) (citing *Hazelwood,* 484 U.S. at 271 n. 4, 108 S.Ct. 562). In *Hazelwood,* the Court drew a distinction between "personal expression that happens to occur on school premises" and expressive activities that are "sponsored" by the school and "may fairly be characterized as part of the school curriculum ...." *Poling v. Murphy,* 872 F.2d 757, 762 (6th Cir.1989) (quoting *Hazelwood,* 484 at 270–71, 108 S.Ct. 562).

▮ In the present case, the Court must first decide how to analyze the plaintiffs' first claim. The plaintiffs say that neither *Fraser* or *Tinker* should apply to this case because no speech took place within the school's jurisdiction. In support of their position, the plaintiffs rely upon *Thomas v. Board of Education,* 607 F.2d 1043 (2d Cir.1979), *Shanley v. Northeast Independent School District,* 462 F.2d 960 (5th Cir.1972), and *Klein v. Smith,* 635 F.Supp. 1440 (D.Me.1986). Each court held that a school improperly disciplined students for off-campus expressive activity. *See Thomas,* 607 F.2d at 1050 (holding invalid a school's discipline of students who printed and sold an offensive, nonschool publication off school grounds); *Shanley,* 462 F.2d at 970–71 (applying *Tinker* and overturning a school's discipline of students who distributed a newspaper away from school property); *Klein,* 635 F.Supp. at 1441–42 (holding that a school could not discipline a student for making an obscene gesture to a teacher after school and off school property).

While Jon Coy accessed the website on a school computer in the school's computer lab, the Court finds the circumstances of this case nearer those of *Tinker* than *Fraser.* Most important, Coy simply accessed his own website, a website he created on his own time and with his own equipment. At the time the defendants expelled Coy, they had no evidence that he had displayed the information contained in the website to any other student. Unlike *Fraser,* there was no evidence that he compelled 600 other students to view his website. And unlike *Fraser,* Coy's website, while crude, was not the "elaborate, graphic, and explicit sexual metaphor" at issue in that case. *Fraser,* 478 U.S. at 678, 106 S.Ct. 3159.

The defendants say Coy's claims should be analyzed under *Fraser* because Jon Coy's website was lewd and vulgar and that *Fraser* allows schools to "categorically prohibit lewd, vulgar or profane language." *Saxe v. State Coll. Area Sch. Dist.,* 240 F.3d 200, 214 (3d Cir.2001). But of course, *Fraser* involved graphic and explicit sexual speech to a group of 600 students, not a student accessing a website he had created.

The Court disagrees with the defendants' premise. The extent of Jon Coy's expressive activity was the private viewing of his own website.[3] The concerns raised

**3.** Jon Coy admitted showing another student    the website while on school property. How-

in *Fraser* and *Hazelwood* are not present in this case. Jon Coy was not speaking or attempting to speak in front of a captive student audience. *See Fraser*, 478 U.S. at 683, 685, 106 S.Ct. 3159 ("A high school class assembly or classroom is no place for a sexually explicit monologue directed towards an unexpected audience of high school students"); *see also Castorina*, 246 F.3d at 542. His expressive activity was not sanctioned by the school nor did the school knowingly provide any materials to support the expression. *See Hazelwood*, 484 U.S. at 273, 108 S.Ct. 562 ("[W]e hold that educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns."); *see also Castorina*, 246 F.3d at 542–43.

Jon Coy's activity is not even akin to putting up a poster in a school hallway. Throughout a single class period, Jon Coy occasionally accessed his website in a manner designed to draw as little attention as possible to what he was viewing. *Tinker*'s holding that it is only appropriate to regulate "silent, passive expression of opinion" when the speech would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school" is the proper standard for the Court to analyze the plaintiffs' first claim. *Tinker*, 393 U.S. at 508, 509, 89 S.Ct. 733; *see also Castorina*, 246 F.3d at 543 (holding that the *Tinker* standard was the most appropriate standard to apply in reviewing a school's decision to discipline two students for wearing t-shirts with the Confederate flag in violation of the school's dress code).

In light of the Court's determination that *Tinker*'s holding applies, material issues of fact prevent either party from prevailing on a motion for summary judgment. The first issue is the basis for which the defendants disciplined Jon Coy. The defendants present evidence showing they disciplined Coy only for accessing the unauthorized website. They claim the actual content of the website was considered for disciplinary purposes only in that vulgar and offensive words appeared on the screen when the website was viewed.

However, the plaintiffs present evidence that the defendants actually disciplined Coy for the expressive content of his website and not for having viewed it at school. Besides Coy's own deposition testimony, the school district's April 26, 2001, expulsion letter states the "inappropriate website" was a major concern in the disciplinary matter. In addition, on March 28, 2001, a day before school officials knew Coy accessed the unauthorized website, Curtis sent an email to the company hosting Coy's website and asked the company to close down the website arguing that it contained offensive material. The defendants produced no evidence that they ever previously disciplined, let alone expelled, another student for accessing an unauthorized web site.

Although implausible, some evidence exists that the defendants expelled Coy, a student who had no previous disciplinary action, for accessing an unauthorized website and not for the content on that website. If true, the defendants could properly discipline Coy for violating the school district's internet policy. Given the parties' demand for a jury, that jury should decide whether the defendants were motivated by the website's content or, as de-

ever, the plaintiffs have presented evidence that the defendants knew nothing of this ac-

tion until after Jon Coy was disciplined.

fendants claim, motivated solely by the accessing of an unapproved site.

If the school disciplined Coy purely because they did not like what was contained in his personal website, the plaintiffs will prevail. *See, e.g., Emmett v. Kent Sch. Dist. No. 415,* 92 F.Supp.2d 1088 (W.D.Wash.2000); *Beussink v. Woodland R–IV Sch. Dist.,* 30 F.Supp.2d 1175 (E.D.Mo.1998).

■ In light of the material issue of fact surrounding the basis for the school district's disciplinary action, summary judgment is not appropriate at this time. In addition, under *Tinker,* to justify disciplining Coy, the school district must show that his expressive activity "materially and substantially interfere[d] with the requirements of appropriate discipline in the operation of the school." *Tinker,* 393 U.S at 509, 89 S.Ct. 733. In this case, the defendants say they disciplined Coy for accessing the website, not for the content of the site. But no evidence suggests that Coy's acts in accessing the website had any effect upon the school district's ability to maintain discipline in the school. In light of the material issues of fact that exist, the Court denies both parties' motions for summary judgment with respect to the plaintiffs' first claim.

### B. Constitutionality of the School District's Code of Conduct

The plaintiffs' second claim challenges of the constitutionality of the school district's student conduct code sections 8, 14, and 21 on overbreadth and vagueness grounds. Specifically, the plaintiffs say that section 21 is facially overbroad as written and that sections 8 and 14 have been applied in an arbitrary and illegitimate manner.

■ The Supreme Court has recognized that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship." *See Fraser,* 478 U.S. at 686, 106 S.Ct. 3159 (quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)). Given a school's need to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, a school's disciplinary rules need not be as detailed as a criminal code that imposes criminal sanctions. *See Fraser,* 478 U.S. at 686, 106 S.Ct. 3159. In this context, the Court analyzes sections 8, 14, and 21 of the school district's student conduct code.

■ A law or regulation is overbroad under the First Amendment if it "reaches a substantial number of impermissible applications" relative to the law's legitimate sweep. *Deja Vu of Nashville, Inc. v. Metro. Gov't,* 274 F.3d 377, 389 (6th Cir.2001) (quoting *New York v. Ferber,* 458 U.S. 747, 771, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). The overbreadth doctrine exists "to prevent the chilling of future protected expression." *Staley v. Jones,* 239 F.3d 769, 779 (6th Cir.2001). Therefore, a law or regulation imposing restrictions so broad that it chills speech outside its legitimate regulatory purpose is unconstitutional. *See Deja Vu of Nashville,* 274 F.3d at 377.

■ When analyzing an overbreath claim, the first step is to determine if the school conduct code reaches a substantial amount of constitutionally protected speech. *See Dambrot v. Cent. Mich. Univ.,* 55 F.3d 1177, 1182 (6th Cir.1995). Section 21 of the school district's student conduct code allows the school to discipline a student for "[a]ny action or behavior judged by school officials to be inappropriate in a school setting." While section 21 does limit discipline for actions or behavior connected with school, there can be no dispute that section 21's language reaches a great deal of protected speech. Many

actions a school official might find inappropriate are still protected by the First Amendment.

Sections 8 and 14 are more limited than section 21, but also regulate constitutionally protected speech. Section 8 says "[a] student shall not use obscenity, profanity, any form of racial or ethnic slurs, or other patently offensive language or gesture, nor shall a student be in possession of patently offensive material on school property, at school-sponsored events off school grounds, or during travel to and from school." This section of the student conduct code regulates the type of speech at the heart of the *Fraser* decision. A school district can and should place limits on how its students address each other in furtherance of its educational mission. However, there is little doubt that section 8's prohibition on profanity and racial and ethnic slurs reaches language, distasteful as it might be, that is protected under the First Amendment.

Similarly, section 14 also sweeps up constitutionally protected speech. Section 14 says "[a] student shall not be defiant, belligerent, disrespectful, or fail to comply with school rules or directions of teachers, substitute teachers, teacher aides, administrators, or other authorized school personnel during any period of time when the student is properly under the school jurisdiction." While a school district can mandate that its students follow the directions of school officials, saying students should not be "defiant" or "disrespectful" encompasses a great deal of conduct that is constitutionally protected.

■ Because all three sections of the student conduct code sweep up constitutionally protected speech, the Court next looks to see if the student code sections are invalid under the void for vagueness doctrine. *See Dambrot*, 55 F.3d at 1183. Vagueness may take two forms, both of which result in a denial of due process.

A vague ordinance denies fair notice of the standard of conduct to which a citizen is held accountable. At the same time an ordinance is void for vagueness if it is an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory and overzealous enforcement.

*Id.* (quoting *Leonardson v. City of East Lansing*, 896 F.2d 190, 195–96 (6th Cir. 1990)).

■ The school district's student conduct code need not define the forbidden conduct with mathematical precision. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1108 (6th Cir.1995). The plaintiffs must do more than show that the regulation "requires a person to conform his conduct to an imprecise but comprehensible normative standard." *Id.* (quoting *United States v. Angiulo*, 897 F.2d 1169, 1179 (1st Cir.1990)). Instead, the complaining party must prove that "no standard of conduct is specified at all." *Id.* (quoting *Angiulo*, 897 F.2d at 1179).

■ Section 21 of the school district's student conduct code is impermissibly vague because it does not give students any indication of what actions or behavior would lead to discipline. Section 21 explicitly allows school officials to discipline students for activity in addition to that listed in the previous twenty sections. This "catch-all" section's only limitation is that school officials must find a student's action "inappropriate." The section does not define "inappropriate" or give any indication to students what activity might be inappropriate. On its face, the wording of section 21 "invites arbitrary, discriminatory and overzealous enforcement." *Dambrot*, 55 F.3d at 1183. The Court holds that section 21 is constitutionally invalid on its face.

On the other hand, the Court holds that sections 8 and 14 are not facially vague. Section 8 prohibits the use of "obscenity, profanity, any form of racial slur or ethnic slurs, or other patently offensive language or gesture." The plaintiff is correct that the student code of conduct does not define the prohibited words or gestures. However, the school district's failure to define these words does not make the section unconstitutionally vague. The section clearly prohibits offensive speech in the form of profanity and racial insults. As this regulation is in a secondary school setting, there is no requirement that the forbidden contact be defined with the preciseness of a criminal statute. *See Fraser*, 478 U.S. at 686, 106 S.Ct. 3159; *Tatum*, 58 F.3d at 1108. In fact, the Supreme Court recognized the desirability in having flexibility in school disciplinary procedures. *See Fraser*, 478 U.S. at 686, 106 S.Ct. 3159.

Importantly, the plaintiffs make no showing that section 8's language does not specify an identifiable standard of conduct. *Tatum*, 58 F.3d at 1108. Even the phrase "patently offensive," the most ambiguous phrase in section 8, when taken in context with the rest of the section, gives students a "comprehensible normative standard" upon which to base their behavior. *Id.*

Finally, in contrast to section 21 of the school district's student conduct code, section 8 clearly limits its application to "school property, at school-sponsored events off school grounds, or during travel to and from school." Because section 8 is written sufficiently clear and limits its application to school-related activities, the Court finds that section 8 is not unconstitutionally vague.

Similarly, section 14 is not unconstitutionally vague. Section 14 prohibits students from being "defiant, belligerent, disrespectful, or [failing] to comply with school rules or directions of [school officials]." Once again, the plaintiff is correct that the school district does not define the prohibited actions. However, the section clearly prohibits students from disobeying their teachers or other individuals responsible for their education or welfare. In the context of a secondary school setting, section 14 is precise enough to give students a standard of behavior. The section also preserves the teachers' and the school district's flexibility in administering discipline.

In addition, section 14's regulatory power is limited to circumstances in which a student is "properly under school jurisdiction." While not precisely defined, the school district's use of "properly under school jurisdiction" shows that it only seeks to have students obey school officials in the context of school-related activities. There is no indication that "school jurisdiction" was meant to be more expansive than section 8's reach of "school property, at school-sponsored events off school grounds, or during travel to and from school."

Just as with section 8, the plaintiffs do not show that section 14 creates an incomprehensible standard that invites arbitrary and discriminatory enforcement. Because section 14 is written clearly and precisely enough to regulate student behavior toward teachers and other school officials when they are within school jurisdiction, the Court holds that section 14 is not unconstitutionally vague.

Finally, the Court addresses the plaintiffs' claim that section 8 and 14 are unconstitutional as applied. As discussed in the previous section, there exists material issues of fact as to the motivation for the defendants' discipline of Jon Coy. Therefore, summary judgment with respect to the plaintiffs' claim that the defendants applied section 8 and 14 in an unconstitutional manner is inappropriate at this time.

## C. Chilling of First Amendment Rights

■ The defendants also filed a motion for summary judgment on the plaintiff's claim that the defendants' actions chilled Jon Coy's exercise of his first amendment rights. The plaintiffs did not respond to the defendants' motion for summary judgment on this claim. Neither did the plaintiffs' motion for summary judgment address the claim.

With respect to the plaintiffs' claim that Coy's exercise of his first amendment rights was chilled, the defendants present evidence that Jon Coy voluntarily chose not to repost his website.[4] The defendants also present evidence that the school district did not direct the police to visit Jon Coy's house or act in a manner designed to chill his expressive activity.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See* Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus.*, 475 U.S. at 586, 106 S.Ct. 1348. The Court holds that the defendants have put forth sufficient evidence to meet their burden for summary judgment. The plaintiffs have failed to present any evidence showing there is a triable issue of fact on their third claim. Therefore, the Court grants the defendants' motion for summary judgment on the plaintiffs' third claim.

### D. Article I, Section 11 of the Ohio Constitution

■ Next, the defendants move for summary judgment on the plaintiffs' claim that the defendants' actions violated the Ohio Constitution. The defendants say there is no private right of action under the Ohio Constitution when other reason-ably satisfactory remedies exist. *See Provens v. Stark County Bd. of MRDD*, 64 Ohio St.3d 252, 252, 594 N.E.2d 959, 959 (1992). In *Provens,* the Ohio Supreme Court held that "[p]ublic employees do not have a private cause of civil action against their employer to redress alleged violations by their employer of policies embodied in the Ohio Constitution when it is determined that there are other reasonably satisfactory remedies provided by statutory enactment and administrative process." *Id.* The defendants's argument that *Provens* applies to the current case is unpersuasive.

The Ohio Supreme Court has concluded that the free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment and that interpretations given the First Amendment are properly applied when interpreting of Article I, Section 11 of the Ohio Constitution. *See Eastwood Mall, Inc. v. Slanco,* 68 Ohio St.3d 221, 222–23, 626 N.E.2d 59, 61 (1994). Because material issues of fact exist with respect to the plaintiffs' first claim under the First Amendment, summary judgment on the plaintiffs' fourth claim is also inappropriate. The Court denies the defendants' motion for summary judgment with respect to this claim.

### E. Qualified Immunity

Finally, Defendants Stanley and Shoup say they are entitled to qualified immunity from the plaintiffs' claims.

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or con-

---

**4.** The defendants do present some evidence that Coy chose not to repost the website on his own. However, the defendants' assertion that Curtis contacted the web hosting company and "simply inquired whether the website should be removed as a result of it not complying with Tripod's guidelines for acceptable website," (Defs.' Mot. for Summ. J. at 14), is disingenuous. Curtis's communication to the web hosting company specifically asked that it to remove the website.

stitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The doctrine of qualified immunity gives state actors the freedom to perform their official duties without an unnecessary fear of reprisal. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (recognizing that to balance the conflicting concerns that actions for damages "may offer the only realistic avenue for vindication of constitutional guarantees" against the risk that "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," the courts have shielded "government officials performing discretionary functions with a qualified immunity").

■ State actors lose this immunity when they violate clearly established constitutional rights of which reasonable people would be expected to know. *See Harlow,* 457 U.S. at 818, 102 S.Ct. 2727 (stating that qualified immunity shields state actors only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). The doctrine will not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ The Sixth Circuit Court of Appeals set forth a three-part test for evaluating claims of qualified immunity.

First, we determine whether a constitutional violation has occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999) (en banc) (internal quotation marks omitted) (citing *Dickerson v. McClellan,* 101 F.3d 1151, 1157–58 (6th Cir.1996)).

For the purposes of qualified immunity analysis, the defendants assume that Coy's constitutional rights were violated. The defendants assert qualified immunity on the premise that the right they allegedly violated was not clearly established. The Sixth Circuit described the process by which courts determine whether a right is clearly established:

In determining whether a constitutional right is "clearly established" at the time of the actions in question we "look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." The standard for qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Therefore, for a plaintiff to make a successful ... claim, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." "Although it need not be the case that 'the very action in question has previously been held unlawful, ... in the light of pre-existing law the unlawfulness must be apparent.'"

*Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir.1996) (internal citations omitted).

The defendants say that because neither the Sixth Circuit nor courts within the Sixth Circuit have addressed the issue of student websites and the First Amendment, the constitutional right at issue was not clearly established.

■ The Court disagrees. As discussed above, *Tinker* applies to this case. The Sixth Circuit has discussed and applied *Tinker* on numerous occasions. *See, e.g., Castorina,* 246 F.3d at 542–44; *Boroff,* 220 F.3d at 469–71; *Settle v. Dickson County Sch. Bd.,* 53 F.3d 152, 155–56 (6th Cir.1995). Furthermore, the Sixth Circuit has made clear that *Fraser*'s and *Hazelwood*'s regulations on student speech are in the context of the Supreme Court's concerns about the audience of the speech and whether the speech could be associated with the school. *See Castorina,* 246 F.3d at 542–44; *Poling,* 872 F.2d at 762. And while the Sixth Circuit has not directly dealt with the issue of a student website and the First Amendment, other courts have. *See, e.g., Emmett,* 92 F.Supp.2d at 1090; *Beussink.,* 30 F.Supp.2d at 1180.

The Court holds that Jon Coy's constitutional right was clearly established. Once it is determined that the right is clearly established, the Court must determine whether the plaintiffs have alleged facts supported by sufficient evidence to indicate Stanley's and Shoup's actions were objectively unreasonable in light of the clearly established constitutional right. *See Dickerson,* 101 F.3d at 1158. Summary judgment is not appropriate if there is a genuine factual dispute relating to whether the defendants committed acts that allegedly violated clearly established rights. *Id.*

As discussed above, there are material issues of genuine fact as to the motivation behind Stanley's and Shoup's decision to discipline Jon Coy. Therefore, the Court holds that Defendants Stanley and Shoup are not entitled to qualified immunity.

## IV. Conclusion

For the reasons discussed above, the Court grants the defendants' motion for summary judgment on the plaintiffs' third claim. The Court denies the defendants' motion for summary judgment on the plaintiffs' first, second, and fourth claims. The Court also denies Defendants Stanley and Stoup qualified immunity. The Court grants the plaintiffs' motion for summary judgment with respect to the facial challenge to section 21 of the school district's student conduct code. The Court denies the rest of the plaintiffs' motion for summary judgment.

IT IS SO ORDERED.